# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARILYN WOODRUFF,**

        **Plaintiff,**

-vs-                               **Case No.  6:06-cv-1937-Orl-22KRS**

**THE SCHOOL BOARD OF SEMINOLE
COUNTY, FLORIDA,**

        **Defendant.**

_____

## ORDER

This cause comes before the Court on the Motion for Summary Judgment by Defendant Seminole County School Board ("SCSB") (Doc. No. 33), and Plaintiff Marilyn Woodruff's Opposition to Defendant's Motion for Summary Judgment (Doc. No. 65[1]).  Upon careful review of the record, submissions of the parties, and relevant case law, the Court grants Defendant's Motion for Summary Judgment.

### Introduction[2]

Plaintiff Marilyn Woodruff worked for Defendant SCSB for various periods from August 24, 1990, until she retired on October 14, 2005.  Woodruff Dep. (Doc. No. 40) 25:25-

---

[1] Plaintiff filed three versions of the opposition (Doc. Nos. 51, 60, and 65) and filed the first version twice, presumably to accommodate all of the exhibits (Doc. Nos. 51 and 52).  The exhibits cited by Plaintiff in the opposition were not filed with later versions of the opposition.  Thus, the operative opposition is located at Doc. No. 65, but its exhibits are located at Doc. Nos. 51 and 52.

[2] Pursuant to Fed. R. Civ. P. 56(c), the facts are drawn from the pleadings, discovery, disclosure materials on file, and affidavits.  The facts are viewed in a light most favorable to Plaintiff or are undisputed.  *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).

28:17; Doc. No. 51-10 at p. 14.  Over the course of her career, Plaintiff worked at various schools, most recently as a pre-k instructional assistant at Casselberry Elementary.  Woodruff Dep. 58:8-21.

Plaintiff suffers from bone ailments (hypophosphotasia and osteonecrosis), knee and back problems, and mental health issues.  *See, e.g.,* Kane Dep., (Doc. No. 42) 13:18-20; 67:10-17; Kovats Dep. (Doc. No. 35) 22:17-27:10; Woodruff Dep. 31:12-20.  For the purposes of summary judgment, Defendant does not dispute that Plaintiff is disabled.  Doc. No. 33 at p. 11 n. 4.

Each classroom in the Seminole County school system was assigned one "lead facilitator" (a teacher) and one instructional assistant.  Woodruff Dep. 44:22-45:7.  For the 2005-2006 school year at Casselberry Elementary, Plaintiff was the pre-k instructional assistant assigned to work with lead facilitator Marianne Percle.  *Id.* at 132:25-133:2.  Plaintiff had worked as the pre-k instructional assistant in Ms. Percle's classroom in 2003-2004 without incident.  Percle Dep. (Doc. No. 39) 15:5-16:3.  As a pre-k instructional assistant, Plaintiff's duties included supervising children at meals, in class, and on the playground, taking children to and from various parts of the school, assisting in drop-off and pickup, redirecting disruptive students, assisting the lead, and preparing the classroom materials.  Woodruff Dep. 39:14-41:3; 76:11-79:16; Dr. Jones Aff. (Doc. 33-3) at ¶ 6.  The instructional assistant position was not a desk job.  Woodruff Dep. 75:25-78:3.

Dr. Analynn Jones was the pre-k coordinator and supervisor for the school district during Plaintiff's most recent time at Casselberry Elementary School.  Doc. 36-2 at p. 49.  In that role, Dr. Jones handled hiring, employee reappointment and evaluation, and curriculum.

-2-

Dr. Jones Dep. (Doc. No. 3) 7:14-18.  Dr. Jones had been satisfied with Plaintiff's performance in prior years, but during the 2005-2006 school year, Dr. Jones dealt with complaints about Plaintiff by the lead facilitator and other teachers.  Dr. Jones Dep. 22:24-23:2; 45:10-18.  The lead facilitator, Ms. Percle, complained that Plaintiff was not adequately performing her job duties.  Specifically, Ms. Percle reported that Plaintiff was not readying the materials on time, repeatedly grabbed children in an inappropriate manner, and had left the classroom for an hour and a half in violation of the rules regarding breaks and a state statute requiring a particular ratio of students to teachers.  *See, e.g.,* Doc. No. 34-4 at pp. 3-7; Dr. Jones Dep. 45:10-18; 47:6-23.       Dr. Jones discussed these issues with Plaintiff, and Plaintiff admitted to Dr. Jones that she had a habit of physical contact with the children and that she was trying to break that habit.  Dr. Jones Dep. 82:8-17; 83:5-84:6; Woodruff Dep. 230:10-232:4.  Dr. Jones went over Plaintiff's assigned duties with Plaintiff and sent her a letter of reprimand reiterating the allegations, memorializing Dr. Jones' conversation with Plaintiff and directing Plaintiff to refrain from using physical contact to correct children's behavior.  Dr. Jones Dep. 48:3-15; Doc. No. 34-4 at p. 6.

       Elizabeth Jones, the "resource teacher," also discussed these issues with Plaintiff.  E. Jones Dep. (Doc. No. 38) 47:15-48:7.  The resource teacher developed lesson plans, purchased and delivered materials, handled individual student needs, screened children, and counseled teachers on how to handle specific classroom issues.  E. Jones Dep. 14:24-18:23.  Ms. Jones met with Plaintiff on September 23, 2005 and memorialized the meeting in her notes.  Doc. No. 38 at p. 52.  Ms. Jones held the meeting because the PE teacher had observed Plaintiff "holding child's [sic] heads into the water at the water fountain . . . on 9/22/05."  Doc. No. 38 at p. 52.

The PE teacher also reported that Plaintiff was seen grabbing children to move them out of line and pinning a child up against the wall.  *Id.*  Plaintiff denied these specific accusations but admitted that she had a habit of touching the children in a reactionary (but not malicious) way. E. Jones Dep. 47:15-48:7; Woodruff Dep. 230:10-232:4.  At the September 23, 2005 meeting, Ms. Jones reiterated that the school required a "hands off" approach to the children and told Plaintiff that she had to work only with Ms. Percle and could not ask other assistants for help. Doc. 38 at p. 52.  Plaintiff started crying, called her psychiatrist (Dr. Kane), took a tranquilizer, and took the rest of that day off of work.  *Id.; see also* Doc. No. 34-4 at p. 12. Dr. Kane wrote Plaintiff a note indicating that she was not to return to work until October 10, 2005 (2 weeks later).  Woodruff Dep. 245:9-12.

Plaintiff returned to work on October 10, 2005. *Id.* at 245:16-18.  That day, the lead facilitator (Ms. Percle) was out sick.  *Id.* at 245:21-25.  Plaintiff had to collect payment (checks and money orders) for the program that day.  *Id.* at 246:12-247:7.  At the end of the day on October 10, 2005, Plaintiff hid what money and checks she had collected in the classroom. Woodruff Dep. 251:8-251:18.  The next day, Ms. Percle was upset at Plaintiff for not properly handling the payments.  Percle Dep. 68:15-70:22.  That week, Plaintiff contacted Vicki Gerard, who was in charge of retirement.  Woodruff Dep. 251:18-24; Doc. No. 33-2 at p. 19; Plaintiff's Response to Defendant's Request for Admissions (Doc. No. 33-6) at ¶¶ 23-24.  Later that week, Plaintiff signed an undated letter notifying the Seminole County Public Schools that she would terminate her employment effective October 14, 2005.  Doc. No. 51-10 at p. 14; Woodruff Dep. 252:3-21.  Plaintiff worked on October 10, 11, and 12, 2005.  Woodruff Dep. 253:22-254:12.

October 13, 2005 was a holiday.  *Id.*  On October 14, 2005, Plaintiff's last day, she worked for a few minutes but then took the rest of the day off as a personal day.  *Id.*; Doc. 33-5 at p. 34.

Plaintiff felt that the other teachers did not like her.  *See. e.g.,* Doc. No. 38 p. 53; E. Jones Dep. 23:4-5.  Plaintiff stated in her deposition that the other teachers were unfriendly, rude, and belittling, would not converse with her, kept information on supplies and schedules from her, were critical of her work performance, and slammed the door in her son's face when Plaintiff drove him to school on her sick day.  *See, e.g.*, Woodruff Dep. 168:25-169:3; 216:2-4; 170:16-17, 216:11-217:24; Woodruff Aff. (Doc. No. 51-4) at ¶¶ 19, 21.  According to Ms. Jones' notes on her conversation with Plaintiff, Plaintiff expressed frustration at the fact that the other teachers did not believe she was sick.  Doc. No. 38 at p. 52.  Ms. Jones told Plaintiff that people were confused by her actions, for example that Plaintiff would be seen running down a ramp but then would sit down in her wheelchair.  *Id.*

Plaintiff sought to work collaboratively with pre-k assistants from other classrooms, but Dr. Jones told Plaintiff that she needed to work only with her lead facilitator and not ask for help from other assistants.  Dr. Jones Dep. 51:12-52:5; 55:17-56:3.  Ms. Jones also told Plaintiff that she could not ask the other pre-k assistants to do her work.  E. Jones Dep. 37:22-38:6.  Dr. Jones discussed with both Plaintiff and Ms. Percle the importance of working together as a team and communicating.  Dr. Jones Dep. 58:25-59:8.

John Reichert was the executive director of human resources and professional standards for SCSB.  Reichert Dep. (Doc. No. 36) 6:16-22.  In January 2005, Plaintiff provided him with a note that said she was unable to work in a job requiring prolonged walking or standing but that she could work a seated desk job with accommodation for a wheelchair and cane.  Doc.

No. 51-8 at p. 4.  Plaintiff was on a leave of absence from the School Board when she submitted

this note.  Woodruff Dep. 58:22-24.  During this leave (from late September 2004 to May

2005), Plaintiff applied to the Social Security Administration for disability benefits.  *Id.* at

206:1-14.  The Social Security Administration denied Plaintiff's claim for benefits in January

2005.  *Id.* at 72:22-73:12.  Plaintiff did not appeal but instead informed the School Board she

would be returning to her job as a pre-k instructional assistant for the 2005-2006 school year,

because she had a continuous contract with the school board and needed the money.  *Id.* at

205:17-206:14; 73:5-12; 74:8-24.

    In July 2005, Plaintiff presented Defendant with a note from Dr. Kovats, stating that

Plaintiff was unable to walk further than 500 feet, needed to use a wheelchair, could not stand

for longer than 20 minutes, could not repeatedly move up and down and had to refrain from

vigorous activity.  Doc. 51-8 at p. 3.  The note also said that Plaintiff was qualified to work a

desk job with accommodations.  *Id.*  On September 7, 2005, Plaintiff presented another note

stating that she was unable to work a job that required prolonged walking or standing and that

she "needed" a desk job.  Doc. No. 51-8 at p. 5.

    At various points between 2003 and 2005, Plaintiff had been granted the

accommodations of a cane, wheelchair, walker, crutches, and a handicap parking space, in

response to her requests for these accommodations.  *See, e.g.,* Woodruff Dep. 184:11-14;

Reichert Dep. 32:12-34:15, Doc. 33-6 at pp. 1-6; Doc. No. 33-2 at pp. 7, 13.  In early 2005,

Plaintiff repeatedly asked Mr. Reichert and Dr. Jones for a desk job within the pre-k

department.  Reichert Dep. 37:24-39:17; Dr. Jones Dep. 101:1-5.  Mr. Reichert explained that

he could not transfer Plaintiff to a clerical position without violating the educational clerical

workers' collective bargaining agreement, and so Plaintiff would have to apply for open desk

jobs. Reichert Dep. 38:12-20; 48:6-21; Reichert Aff. Doc. No. 33-4 at ¶ 16. Both Dr. Jones and

Mr. Reichert told Plaintiff that there was no such job within the pre-k department, that they

could not simply transfer her to a sedentary position in another department, and that she would

have to apply for any vacant desk jobs that arose. *See, e.g.,* Reichert Dep. 37:24-39:17; 48:10-

21; Dr. Jones Dep. 101:1-5; 119:17-22; 120:15-121:6.

In the summer of 2005, Plaintiff applied for at least ten[3] positions with the School Board

in compliance with the CBA. Reichert Aff. (Doc. No. 33-4) at Ex. A; Doc. No. 51-10 at pp. 44-

61. Six of these positions were teaching or assistant teaching positions, which are not desk jobs.

Reichert Aff. (Doc. No. 33-4) at ¶¶ 6, 7, 11, and 12; *see also* Woodruff Dep. 154:11-13; 166:12-

20. Plaintiff claimed that the instructional assistant positions in reading would require less

movement than the pre-k instructional assistant position she currently had. Woodruff Dep.

157:9-158:8; Woodruff Aff. (Doc. No. 51-4) at ¶¶ 9-10. Still, Plaintiff admits that her disability

interfered with the essential functions of the instructional assistant job. Woodruff Dep. 142:18-

25. Plaintiff required a desk job (Doc. No. 51-8 at p. 5), and instructional assistant positions

are not desk jobs. Woodruff Dep. 145:19-20. The only desk job for which Plaintiff applied was

a secretarial position. Woodruff Dep. 152:22-154:13. Dr. Jones interviewed Plaintiff for the

secretarial position, but a candidate with more recent and considerable secretarial experience

---

[3]Defendant's records indicate Plaintiff applied for ten positions. Reichert Aff. (Doc. No. 33-4) at Ex. A. Plaintiff states that she applied for over twenty positions and interviewed for eight of them. Doc. No. 36-2 at p. 16; *see also* Woodruff Dep. 152:8-17. Defendant's records indicate that she interviewed for three. Doc. No. 36-2 at p. 121; Doc. No. 51-10 at pp. 44-61. However, this inconsistency is immaterial. *See infra* Section II(C).

was hired.  Woodruff Dep. 153:4-18; Dr. Jones Dep. 139:9-142:13; Doc. No. 33-6 at ¶¶ 29-30.

Plaintiff also applied for an instructional assistant position in exceptional student education

(working with students with disabilities) and a clinic assistant position.    Doc. No. 36-2 at p.

121.  Neither of these positions were desk jobs.  Woodruff Dep. 152:22-154:13.

Plaintiff received accommodations as an instructional assistant up to September 2005.

For instance, Dr. Jones had instructed Ms. Percle that Plaintiff was to take sitting breaks and

be seated during "circle time," when the instructor would normally have to sit on the floor.  Dr.

Jones Dep. 99:5-100:17.  Plaintiff was provided with a chair and could be seated in the

classroom when possible.  Woodruff Dep. 186:24-187:3.  Dr. Jones also instructed Ms. Percle

that Plaintiff was to be allowed to use a wheelchair and store it in the classroom.  Dr. Jones Dep.

99:5-100:17; Woodruff Dep. 220:23-221:20.  Plaintiff presented Defendant with a note from

her doctor on September 1, 2005, releasing Plaintiff from work on temporary medical leave, and

another note from her doctor on September 7, 2005, indicating that Plaintiff required a desk job.

Doc. Nos. 35-3 at pp. 66, 70.  Upon receiving the note releasing Plaintiff from work, Defendant

hired a temporary substitute.  Doc. No. 35-3 at p. 66.  Upon receiving the September 7, 2005

note stating that Plaintiff required a desk job, Plaintiff was provided with a table set up in the

classroom.  Doc. No. 51-4 at p. 23; Dr. Jones Dep. 90:15-92:13; Doc. No. 36-2 at p. 52.  At

some later point (either days or weeks later)[4], Defendant removed the table and chair from the

_____

[4]The lead facilitator stated that the table and chair were removed a few weeks after they were
placed in the classroom.  Percle Dep. 40:12-21.  Plaintiff claims these accommodations were removed
on September 19, a week after they were placed in the classroom and not coincidentally, the day
Defendant received the EEOC's Notice of the charge of discrimination.  Doc. No. 65 at p. 7.  Dr.
Jones' notes indicate that on September 19, 2005, Plaintiff "returned to her regular duties per her
doctor's note with previously discussed accommodation."  Doc. No. 51-10 at p. 5 Plaintiff did in fact

classroom.  Dr. Jones Dep. 91:12-17; Reichert Dep. 35:5-35:21.  Plaintiff alleges the removal was retaliatory.  Doc. No. 65 at p .17.  Ms. Percle stated that the table and chair were removed in response to a directive from Dr. Jones (Percle. Dep. 113:1-6), but neither Ms. Percle nor Dr. Jones remembers why it was removed.

Plaintiff had filed a charge of discrimination for failure to provide an accommodation against the School Board in 2001.  Doc. 33-2 at pp. 9-10.  That charge resulted in a conciliation agreement with SCSB, which returned Plaintiff to her position at Casselberry Elementary with accommodations.  Woodruff Dep. 136:21-25.  In September 2003, Plaintiff filed a charge of discrimination alleging that she was disciplined in retaliation for filing the original charge of discrimination.  Doc. No. 33-2 at p. 11. The EEOC stated that it was unable to conclude that statutory violations had occurred and closed the file on that charge.  Doc. No. 33-2 at p. 6.

Plaintiff filed another charge of discrimination with the EEOC in September 2005.  Doc. 33-2 at pp. 8, 17-18.  In March of 2006, Plaintiff amended this charge to include claims for hostile work environment and retaliation.  Doc. 33-2 at pp. 17, 18. After receiving notice of her right to sue, Plaintiff filed this suit on December 22, 2006.  Doc. No. 1.  Plaintiff later amended the Complaint and now alleges disability discrimination, hostile work environment, and retaliation under the Americans with Disabilities Act ("ADA").  Doc. No. 20 at ¶¶ 22-31.

**Analysis**

## I.  Summary Judgment Standard

---

visit the doctor on September 19, 2005.  Doc. No. 35-3 at p. 49.  No one remembers exactly when or why the table and chair were removed from the classroom.  The witnesses recall the accommodations being in place for a period of days or weeks.  Dr. Jones Dep. 91:12-17; Reichert Dep. 87:23-25; Dr. Jones Dep. 92:6-21.

Summary judgment should be ordered "if the pleadings, the discovery, and the disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To avoid summary judgment, the opposing party must come forward with specific facts in dispute that are material and of a substantial nature. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must make all reasonable factual inferences in favor of the opposing party in assessing whether an issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).

## II.  Plaintiff's Disability Discrimination Claim

In the Amended Complaint, Plaintiff alleges discrimination, a hostile work environment, and retaliation under the ADA. Doc. No. 20 at ¶¶ 22-31. To show discrimination based on a disability in violation of the ADA, Plaintiff must show that she is a qualified individual with a disability for whom an employer has refused to provide a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A); *Collado v. United Parcel Serv*., 419 F.3d 1143, 1149 (11th Cir. 2005).

## A.  To Bring an ADA Claim, Plaintiff Must be a Qualified Individual With a Disability

Plaintiff has presented evidence of her disability, and for the purposes of summary judgment, Defendant does not dispute that Plaintiff is disabled. Doc. No. 33 at p. 11 n. 4. Defendant argues that Plaintiff is not a "qualified individual" for her former job as a pre-k instructional assistant, because her disability rendered her unable to perform the essential functions of that job. Doc. No. 33 at pp. 11-12. Defendant argues that because Plaintiff's job as a pre-k assistant required a great deal of movement and no accommodation could make

Plaintiff able to perform it, Plaintiff is not a qualified individual who would be entitled to an accommodation.  *Id.*; Dr. Jones Aff. (Doc. No. 33-3) at ¶¶ 6-7.

Over her last few years of work for Defendant, Plaintiff required numerous leaves of absence,[5] and in January, July, and September 2005, doctors indicated that she could not walk or stand for long periods and that she needed a desk job.  Reichert Dep. Ex. 7; Woodruff Dep. 58:22-24; Doc. No. 51-8 at pp. 3-5.  Plaintiff admitted that her disability at times interfered with the essential functions of the instructional assistant job.  Woodruff Dep. 142:18-25.  However, despite her disability and doctors' opinions in January, July, and September 2005 that she needed a desk job, Plaintiff applied for other instructional assistant and teacher positions and ultimately returned to work as a pre-k instructional assistant at the start of the 2005-2006 school year.  Woodruff Dep. 73:5-12; 205:17-206:14; Doc. No. 36-2 pp. 13-15.  Plaintiff believed she was a qualified individual for these positions and that she could perform them given accommodations.  Defendant disagreed, because the accommodations given did not make Plaintiff capable of performing anything other than a desk job.

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds *or desires*.  42 U.S.C. § 12111(8) (emphasis added).  Even though Plaintiff was not physically able to perform all the duties of an instructional assistant, Plaintiff was able to perform the duties of the desk job she *desired.  See id.*  That reassignment is listed as a potential reasonable accommodation in the text of the ADA

---

[5]Plaintiff took a leave of absence for nearly the entire 2004-2005 school year, from late September through May.  Woodruff  Dep. 58:22-23; 201:14-18.

means that an individual whose disability renders her incapable of performing her current job

is still covered by the ADA.  *See* 42 U.S.C. § 12111(9)(B); *Aka v. Washington Hospital Center*,

156 F.3d 1284, 1300-01 (D.C. Cir. 1998).  The Court holds that Plaintiff was not a qualified

individual for an instructional assistant position, because no reasonable accommodation could

make her able to continue her current job.  However, Plaintiff was a qualified individual for the

desk job she sought.  *See* 42 U.S.C. § 12111(8).  Regardless, Plaintiff was not denied reasonable

accommodations when she was not reassigned or hired in another capacity.  Because Plaintiff

was not denied a reasonable accommodation, Defendant is entitled to summary judgment on

the issue of discrimination.

**B.  Transfer Was Not A Reasonable Accommodation Because It Would Have Violated the Collective Bargaining Agreement**

Plaintiff argues that Defendant failed to provide the reasonable accommodation of

reassigning Plaintiff to a desk job in 2005.  Doc. No. 65 at p. 11.  Defendant responds that

simply assigning Plaintiff to a vacant sedentary clerical position would have violated the CBA

that Defendant had with its clerical workers.  Doc. No. 33 at p. 14; *see also* Agreement Between

Seminole Educational Clerical Ass'n and the School Bd. of Seminole County (Doc. No. 36-2)

at pp. 70-71.  The CBA covers instructional assistants and secretaries and requires that all

vacant jobs be publicly posted and that at least three current employees are interviewed for each

position.  Reichert Dep. 11:23-12:9; Doc. No. 36-2 at p. 70.  Mr. Reichert informed Plaintiff

that he could not transfer her without violating the CBA and that Plaintiff would need to apply

for any vacant positions in compliance with the CBA.  Reichert Dep. 38:12-20.

It is Plaintiff who bears the burden of demonstrating that an accommodation is reasonable. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998). It is true that the ADA lists reassignment to a vacant position as a potential reasonable accommodation in 42 U.S.C. § 12111(9)(B). However, where a request for a reasonable accommodation would violate a CBA, the requested accommodation is not reasonable. The Supreme Court noted in an ADA case that "lower courts have unanimously found that collectively bargained seniority trumps the need for reasonable accommodation in the context of the linguistically similar Rehabilitation Act." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002) (citations omitted). While "neither a collective bargaining contract nor a seniority system may be employed to violate a statute," the ADA's duty to accommodate does not require Defendant "to take steps inconsistent with the otherwise valid agreement." *Eckles v. Consol. Rail Corp.,* 94 F.3d 1041, 1048 (7th Cir. 1996) (citing *Trans World Airlines v. Hardison,* 432 U.S. 63, 79 (1977)). *See also Feliciano v. Rhode Island*, 160 F.3d 780, 787 (1st Cir. 1998) ("an employer is not required to violate the provisions of a collective bargaining agreement or the rights of other employees in seeking . . . reassignment."). Plaintiff's direct placement in a desk job would have violated the CBA and was not a reasonable accommodation.

Additionally, Defendant has presented evidence that a move from the instructional assistant position to a secretary position would be a promotion, because the secretarial position is set at a higher pay rate and is considered a promotion at the school. Sanchez Dep. (Doc. No. 43) 46:19-47:2; Reichert Dep. 39:3-40:1; Reichert Aff. ¶ 17.[6] "The ADA does not require an

---

[6]Plaintiff denies that the secretarial position was a promotion (Doc. No. 65 at p. 13), but the testimony of both Mr. Reichert and Mr. Sanchez indicate that it was. Regardless, Plaintiff was not

employer to promote a disabled employee as an accommodation[.]" *Terrell,* 132 F.3d at 626 (citing *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995)). Thus, Defendant's refusal to violate the CBA and promote Plaintiff to a clerical desk job did not constitute unlawful discrimination under the ADA.

## C. Not Hiring Plaintiff for Vacant Positions Was Not Discriminatory

When Defendant told Plaintiff that she could not be transferred in violation of the CBA and would have to apply for vacant positions, Plaintiff complied. Doc. No. 33-4 at pp. 5-6. Plaintiff applied for at least ten and as many as twenty positions with the School Board in compliance with the CBA. Woodruff Dep. 152:8-17; Doc. 36-2 at p. 16. In the summer of 2005, Plaintiff applied for other instructional assistant positions, teaching positions, a secretary position, and a clinic assistant position. Doc. No. 36-2 at pp. 120-22. At least six of these positions were for teaching or instructional assistant positions, which are not desk jobs. Doc. No. 33-4 at pp. 5-6. In January and July 2005, Plaintiff and her doctors stressed that she needed a desk job. Doc. 51-8 at pp. 3-4. Because instructional assistant positions are not desk jobs, Plaintiff was not qualified for any instructional assistant positions. Plaintiff claims that the instructional assistant job for a reading class or exceptional student education class would require less movement and be an easier environment for a wheelchair than her pre-k instructional assistant position. Doc. No. 65 at p. 8; Woodruff Dep. 153:20-25; 209:3-12. But, the fact remains that instructional assistant positions require interaction and supervision of children and are not desk jobs. Woodruff Dep. 208:9-13. Defendant would not be satisfying

---

entitled to even a lateral transfer in violation of the CBA. *See infra* pp. 11-12.

its obligation to accommodate Plaintiff's disability if it transferred Plaintiff to an instructional assistant position that she and her doctors had said she could not perform. *See, e.g.,* Reichert Dep. 24:20-25:3; Doc. No. 51-8 at pp. 3-5.

Plaintiff admitted that the only job for which she applied that was a desk job was a secretary position. Woodruff Dep. 154:7-13. Plaintiff interviewed for at least three nonteaching positions, including the secretary position. Doc. No. 36-2 at p. 121. For each of these positions, Defendant presented legitimate reasons why candidates other than Plaintiff were ultimately hired. *See id* at pp. 121-130. Plaintiff was not hired as a secretary because she lacked secretarial experience compared to other applicants. *Id.*; Woodruff Dep. 153:9-18; Dr. Jones Dep. 139:9-142:13; Doc. No. 33-6 at p. 9. Plaintiff was interviewed but not hired for the clinic assistant position, because she lacked relevant clinic experience.[7] Doc. No. 36-2 at pp. 121. Plaintiff was not hired as an assistant to the principal because the hiring team knew another candidate personally and believed her to be the better candidate. *Id.* This is not a case like *Aka*, 156 F.3d at 1294, where the plaintiff was clearly the more qualified candidate and yet was not hired, raising an inference of discrimination and precluding summary judgment. Here, Plaintiff was not as well-qualified as other applicants and therefore was not hired.

Plaintiff argues that in a situation where a disabled person has been denied a transfer and is not hired for other vacant positions, there is necessarily a violation of the ADA. Doc. No. 65 at p. 11. However, the ADA does not require preferential treatment for the disabled over

---

[7]Plaintiff had become a certified nurse assistant but the certification had lapsed. Woodruff Dep. 164:22-165:6; Ex. 1. Unlike Plaintiff, the person hired for the clinic assistant position was certified in CPR and First Aid and had worked as a clinic assistant in another school. Doc. 36-2 at p. 121.

equally or better-qualified individuals. *Terrell*, 132 F.3d at 627. Instead, the ADA seeks to create equal employment opportunities by requiring reasonable accommodations. 42 U.S.C. § 12112(b)(5)(A). The Eleventh Circuit in *Terrell*, 132 F.3d at 627, stated, "[t]he ADA was never intended to turn nondiscrimination into discrimination." There, the Eleventh Circuit cited *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995), in which the Fifth Circuit held that the ADA does not require "affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled." Defendant was not required to hire Plaintiff for jobs in which she had little or no experience or for which she was not the best candidate. *See Terrell,* 132 F.3d at 627. Because neither failing to transfer nor failing to hire Plaintiff constituted discrimination, Plaintiff has failed to meet her burden of proving discrimination. Thus, Defendant is entitled to summary judgment.

**D. Plaintiff's Other Vague Claims of Discrimination in 2004 and Discrimination Based on Wheelchair Storage Also Fail**

Plaintiff's Amended Complaint also claims that Defendant failed to reasonably accommodate Plaintiff in 2004, but gives no explanation or details as to what accommodations Plaintiff was denied in 2004. Doc. No. 20 at ¶ 23. In the Opposition to the Motion for Summary Judgment, Plaintiff claims that in 2004, Defendant never "specified" the accommodations to be provided. Doc. No. 65 at p. 6. In her deposition, Plaintiff stated "[t]he only accommodations that I knew about in '04 and '05 . . . were the same as in '99, that when I could I was to sit down . . . if possible." Woodruff Dep. 186:24-187:1. Defendant has shown that Plaintiff was provided with the reasonable accommodations of a cane, wheelchair,

crutches, and additional sedentary duties in class during 2004.  *See, e.g.,* Woodruff Dep. 184:11-14.  Based on this evidence, Plaintiff has not shown any discrimination in 2004.

Plaintiff also claims that attempts to use the accommodations she was given were "sabotaged" at the beginning of the 2005-2006 school year, because Ms. Percle would not let Plaintiff store her wheelchair in the classroom.  Doc. No. 65 at p. 6 n. 4.  But, Plaintiff admits that she usually left her wheelchair in the car, because the wheelchair got wet in the classroom, did not fit well, and posed a hazard to the students.  Woodruff Dep. 214:1-3; 221:12-20.  Plaintiff also testified that ultimately she was allowed to store the wheelchair in the classroom closet until it did not fit.  Woodruff Dep. 220:17-221:20.  At that point, she stored the wheelchair outside the classroom, but she was permitted to use a regular chair when possible for seated activities in the classroom.  Woodruff Dep. 186:21-187:3; 220:17-221:9; 212:25-214:14.  Based on the evidence, the Court holds that Plaintiff has no claim for discrimination based on Defendant allegedly not providing a space for Plaintiff's wheelchair.  Therefore, summary judgment is warranted on Plaintiff's discrimination claims.

**III.  Plaintiff's Retaliation Claim**

Retaliation based on disability rights is analyzed using the same burden-shifting model that applies to disparate treatment discrimination. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (citations omitted).  To show that Plaintiff was subject to retaliation in violation of the ADA, she must prove a prima facie case by showing that she was engaged in protected activity and subject to adverse employment action and that there is a causal link

between the adverse action and the protected activity.  *Id.*  Plaintiff did engage in protected

activities when she requested accommodations at her job and filed charges of discrimination.

As for an adverse employment action, Plaintiff alleges that upon returning to work for

the 2005-2006 school year, she was repeatedly counseled and criticized by her resource teacher,

lead facilitator, and pre-k coordinator (at times for acts she did not commit), subject to a hostile

work environment that Plaintiff alleges forced her to retire, and that Defendant removed certain

accommodations, all in retaliation against Plaintiff.  Woodruff Aff. (Doc. No. 51-4) at ¶¶ 18-21;

Amended Compl.(Doc. No. 20) at ¶¶ 23, 26, and 30.

## A.  Being Counseled for Performance Issues was not Retaliatory

The record indicates that Plaintiff was counseled about her job performance because

multiple employees reported that Plaintiff grabbed children and failed to perform her duties to

the lead facilitator's liking.  *See, e.g.,* Doc. No. 34-4 at pp. 3-7; Dr. Jones Dep. 45:10-18; 47:6-

23; Woodruff Dep. 169:7-21: 173:12-19.  Plaintiff admitted that she a habit of physical contact

with the children and discussed with the resource teacher and pre-k coordinator ways to remind

herself not to touch or grab the children.  Dr. Jones Dep. 82:8-17; 83:5-84:6; E. Jones Dep.

47:15-48:7.  On this evidence, Plaintiff has failed to show that the criticism she received was

linked to Plaintiff asserting her ADA rights.  The discussions she had with Ms. Percle, Ms.

Jones, and Dr. Jones were not retaliatory but were instead made in response to reports of

Plaintiff's misconduct.

## B.  Behavior by Plaintiff's Coworkers was Not Retaliation by Defendant

Plaintiff also alleges that her coworkers mistreated her and were unfriendly, rude,

and uncooperative.  Woodruff Dep. 168:25-169:3; 170:25-176:19; 216:1-217:21; Woodruff

Aff. (Doc. No. 51-4) at ¶¶ 19 and 21.  Among other incidents, Plaintiff alleges that Ms.

Percle slammed the door in her son's face, that teachers made false reports of her grabbing

children, and that her coworkers never said hello and would not let her sit with them at

lunch.  Woodruff Aff. (Doc. No. 51-4) at ¶¶ 18, 19, and 21; Woodruff Dep. 216:1-6; 217:1-

21.  Plaintiff complained to Ms. Jones that her coworkers did not believe she was disabled.

Doc. No. 38 at p. 52.  Ms. Jones told Plaintiff that because of her behavior, her coworkers

were skeptical of her disability claims and preferential treatment.  *Id.*

The Eleventh Circuit has rejected the proposition that every unkind act is unlawful

and instead held that "ordinary tribulations of the workplace" are not actionable.  *Davis v.

Town of Lake Park,* 245 F. 3d 1232, 1238-39 (11th Cir. 2001).[8]  Furthermore, the unfriendly

actions of Plaintiff's coworkers (as opposed to her superiors) could only be attributed to

Defendant SCSB if the conduct constituted harassment, if Defendant knew or should have

known of it and failed to correct it.  *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269,

1278 (11th Cir. 2002) (citations omitted).  The conduct here did not rise to the level of

harassment, and Dr. Jones attempted to smooth communications between Ms. Percle and

Plaintiff, stressing to both of them the need for cooperation and communication.  Doc. No.

51-10 at p. 4.  The conduct of Plaintiff's coworkers in this case was rude but not severe or

pervasive enough to constitute harassment or a hostile work environment or any other

adverse action that would support a retaliation claim.  Because Plaintiff has failed to show

---

[8]*Davis* was a Title VII case, but the Eleventh Circuit noted that the adverse employment action it was discussing is also a requirement in ADA cases.  *Davis*, 245 F.3d at 1238.

retaliation based on harassment or her work environment, Defendant is entitled to summary judgment.

**C.  Removal of the Table and Chair Provided for Plaintiff was not Retaliatory, Nor Was Storage of Her Wheelchair Outside the Classroom**

Plaintiff claims that the removal of certain accommodations was an adverse employment action taken in retaliation for Plaintiff asserting her ADA rights.  Specifically, Plaintiff alleges retaliation because a table and chair that had been placed in Plaintiff's classroom on September 12, 2005 for her to perform sedentary work were suddenly removed on September 19, 2005 (the day Defendant received the notice of charge of discrimination from the EEOC) and because Ms. Jones told Plaintiff that she could not park her wheelchair in the classroom on September 20, 2005 (the day after Defendant received the charge of discrimination).[9]  Doc. No. 65 at p. 6 n. 4, p. 7.  Plaintiff argues that these events and coincidental dates evidence retaliation.  *Id*.  However, the record does not establish these dates with certainty and shows no retaliation.

Plaintiff's Affidavit states that "*on or about* September 20, 2005, Resource Teacher Liz Jones instructed me to park my wheelchair outside of the classroom."  Woodruff Aff. (Doc. No. 51-4) at p. 2 (emphasis added).  Ms. Jones denies telling Plaintiff this. E. Jones Dep. 44:14-21. Dr. Jones' notes indicate that it was July 2005 (not September), when Ms. Percle told Plaintiff she could not put her wheelchair in the classroom closet.  Doc. No. 51-10 at p. 2.  Thus, the

_____

[9]Plaintiff's Amended Complaint also claims that Plaintiff was retaliated against for filing the 2001 charge of discrimination but fails to explain how the 2001 charge relates to conduct in 2004 and 2005.  Doc. No. 20 at ¶¶ 29-30.  The Court treats the Amended Complaint as alleging retaliation for exercising ADA rights generally during her career with Defendant.

allegedly coincidental dates do not support an inference of retaliation.  Additionally, Plaintiff did not mention any dates in her deposition and instead stated that it was difficult to maneuver the wheelchair, there was no space for it, and that Ms. Percle told Ms. Jones that it was best to leave it outside.  Woodruff Dep. 213:17-214:8.  When asked if Plaintiff agreed with Ms. Percle's decision, Plaintiff stated that "[i]t would get wet often and it was difficult to maneuver around the children, so a lot of times I would just leave it in my car[.]" Woodruff Dep. 214:1-3. Plaintiff's own testimony is inconsistent regarding storage of the wheelchair, and the date of removal Plaintiff gives is speculative.  Therefore, no retaliation has been shown.

As to the allegedly retaliatory removal of the table and chair, the record indicates that at the request of the district office, a substitute was placed in Plaintiff's position on September 12, 2005, and a table and chair were also set up at the back of the classroom for Plaintiff to work while seated.  Doc. No. 36-2 at p. 52.  Plaintiff had presented a doctor's note on September 1, 2005 that she be released from work, told Dr. Jones she would be visiting the doctor again on September 12, 2005, and returned to work on September 12.  Doc. No. 33-5 at p. 33; Doc. No. 35-3 at p. 66; Doc. No. 36-2 at p. 52.  Dr. Jones' notes from September 19, 2005, state that Plaintiff "returned to her regular duties per her doctor's note with previously discussed accommodations." Doc. No. 36-2 at p. 52.  Plaintiff alleges that this is false and that retaliation was the reason the table and chair were removed.  Doc. No. 65 at p. 7.  But, Plaintiff did in fact see the doctor on September 19, 2005.  Doc. No. 35-3 at p. 49.  Plaintiff fails to mention this in alleging retaliation.  *See* Doc. No. 65 at p. 7.  While there is no doctor's note from September 19, 2005, the fact that Plaintiff visited the doctor on September 19, 2005, is consistent with Dr. Jones' notes from that date as to why the accommodation was removed.

Neither Mr. Reichert, Ms. Percle, Ms. Jones, nor Dr. Jones remember exactly when the table and chair were removed from the classroom; these witnesses recall the accommodations being in place for a period of days or weeks.  Dr. Jones Dep. 91:12-17; Percle Dep. 40:12-41:11; Reichert Dep. 87:23-25; Dr. Jones Dep. 92:6-21.  Plaintiff has not shown that the removal of the table and chair was linked in any way to receiving the notice of the charge of discrimination. Thus, Defendant is entitled to summary judgment.

Additionally, removing an accommodation that is not required is not an adverse action. An employer need only make reasonable accommodations, not those that  alter the essential functions of a job or cause the employer an undue hardship.  *Barnett*, 535 U.S. at 402-03.  Thus, the School Board was not required to hire a substitute for Plaintiff nor to create a desk position within the classroom, essentially paying two people to perform Plaintiff's job.  *See id*.  There is no adverse employment action in Defendant ceasing to expend the cost of accommodations it was not required to supply.  *See, e.g.*, *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (prior accommodations do not make an accommodation reasonable); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997) ("we cannot say that [Defendant's] decision to cease making those accommodations that pertained to the essential functions of [Plaintiff's] job was violative of the ADA.").  There is also evidence that Plaintiff was not using the accommodations.[10]  Because Defendant did not retaliate against Plaintiff in removing the

---

[10]Ms. Percle testified that Plaintiff "wasn't happy with the table and chair[.]  She mentioned that she didn't like just sitting there.  And I needed to remind her at times . . .  to sit back at the table and chair and [not] to be doing anything with the children."  Percle Dep. 41:17-23.

additional accommodations, Defendant's motion for summary judgment is granted on the retaliation claim.

## IV.  Plaintiff's Hostile Work Environment Claim

Plaintiff also claims she was subject to a hostile work environment that ultimately caused her to resign.[11]  Amended Compl. (Doc. No. 20) at ¶ 26.  A hostile work environment claim can be made on the basis of disability.  *See, e.g., Haysman v. Food Lion, Inc.*, 893 F. Supp. 1092, 1106 (S.D. Ga. 1995); *Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1362 (S.D. Fla. 2000); *Rio v. Runyon*, 972 F. Supp. 1446, 1459 (S.D. Fla. 1997) (cases recognizing potential hostile environment claims in disability harassment cases).  This claim is analyzed under the Title VII standard for a hostile work environment.  *Mont-Ros*, 111 F. Supp. 2d at 1362.  To show a hostile work environment under Title VII, Plaintiff must show that the alleged harassment created an environment that is objectively and subjectively hostile or abusive.  *Haysman*, 893 F. Supp. at 1107 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993)).  Factors to be considered in determining whether a hostile work environment existed include the

---

[11]A hostile work environment can provide the basis for a constructive discharge claim. Plaintiff's Amended Complaint does not mention the term "constructive discharge," but Plaintiff's allegation that the hostile work environment "forced her" and "encouraged" her to resign is equivalent to a constructive discharge claim.  Amended Compl. (Doc. No. 20) at ¶¶ 18, 26.  Regardless, the conduct alleged was not severe enough to create a hostile work environment or lead to constructive discharge.  *See, e.g, Horn v. University of Minnesota*, 362 F. 3d 1042, 1047 (8th Cir. 2004) (documentation of alleged performance problems and unprofessional treatment of Plaintiff that forced Plaintiff to quit were difficult and uncomfortable but did not rise to the level of intolerable working conditions); *Rojas v. Florida*, 285 F. 3d 1339, 1344 (11th Cir. 2002) (being overly scrutinized, treated coolly, and made to feel unwelcome does not constitute a hostile work environment).  Though Plaintiff met with the retirement coordinator and submitted her letter of resignation after a particularly stressful day at school, Plaintiff's decision to retire was voluntary.  *See* Woodruff Dep. 245:21-251:24; 251:19- 252:2.

frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating as opposed to composed of merely offensive utterances, and whether it unreasonably interfered with an employee's work performance.  *Harris*, 510 U.S. at 23.

The same actions that Plaintiff alleges constituted discrimination and retaliation for her asserting her ADA rights are the basis for Plaintiff's allegations of a hostile work environment. These include being reported to her superiors by the lead facilitator and others for every misstep and for things Plaintiff alleges she did not do.  *See, e.g.,* Woodruff Dep. 176:5-12; 234:15-18. Plaintiff also states that her coworkers were "belittling" and "unfriendly," would not converse with her, and kept information on supplies and schedules from her.  Woodruff Dep. 168:25-169:3; 170:5-17; 216:2-4; 216:1-217:21.  However, these allegations fail to rise to the level of a hostile work environment in frequency or severity.  Plaintiff was never threatened or humiliated, and Defendant has shown that the times it counseled Plaintiff were based on reports by Plaintiff's coworkers about Plaintiff grabbing children or failing to perform her duties. Plaintiff's coworkers were skeptical of her disability and were at times unfriendly, but the environment was not objectively hostile. *See Harris*, 510 U.S. at 23.  Because Plaintiff was not subject to a hostile work environment, Defendant's motion for summary judgment on the hostile work environment claim is granted.

### Conclusion

Based on the foregoing, it is ORDERED as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 33), filed December 7, 2007, is GRANTED.

2.  The Clerk is directed to enter a FINAL JUDGMENT providing that Plaintiff recover nothing, and the Defendant School Board of Seminole County, Florida recover costs from Plaintiff Marilyn Woodruff.

3.  All other pending motions are DENIED as moot.

4.  The Clerk is directed to CLOSE the file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on March 19, 2008.

Copies furnished to:
Counsel of Record

ANNE C. CONWAY
United States District Judge